UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KEITH ABDUL JENNINGS, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:09-CV-427 RLM |
| | ) | (arising out of 3:06-CR-71(01) RLM) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

OPINION AND ORDER

After the court of appeals affirmed his conviction and 360-month sentence for possession with intent to distribute crack cocaine, United States v. Jennings, 544 F.3d 815 (7th Cir. 2008), Keith Jennings filed (and then amended) a petition under 28 U.S.C. § 2255. Mr. Jennings contends the court erred at sentencing by treating a prior conviction as a crime of violence, and that his attorney provided ineffective assistance of counsel by failing to convey a plea offer from the government and by failing to argue on appeal that the court treated the guideline range as presumptively correct. No hearing is needed to resolve the issues. For the reasons that follow, the court denies Mr. Jennings's petition.

The court of appeals set forth the case's underlying facts, and the court needn't repeat them here.

Mr. Jennings's first effective assistance of counsel claim is effectively defeated by the affidavits of the trial prosecutor and trial counsel that the government made no plea offer that could have been conveyed to Mr. Jennings. Mr. Jennings sought more time to respond to those affidavits, but didn't do so.

Without any indication that there was a plea offer to convey, Mr. Jennings can't demonstrate ineffective assistance of counsel in the failure to convey it.

At the sentencing, the court found that Mr. Jennings was a career offender based in part (the other part was Mr. Jennings's seven-year federal sentence for possession with intent to distribute crack cocaine) on his earlier conviction for resisting law enforcement in a manner that created a substantial risk of bodily injury to another person, a class D felony under Indiana law. Mr. Jennings points to a line of cases decided under United States v. Begay, 553 U.S. 137 (2008), to argue that as the law is understood today, that Indiana conviction wouldn't be deemed a "crime of violence" for sentencing purposes, so he wouldn't be a career offender.

This argument can't succeed. When the court of appeals decided Mr. Jennings's appeal, it affirmed this court's holding that the prior conviction was a crime of violence even in light of Begay. The principal case on which Mr. Jennings constructs his argument — United States v. Smith, 544 F.3d 781 (7th Cir. 2008) — already had been decided when the court of appeals affirmed Mr. Jennings's conviction. The law's development since then doesn't point unerringly to the conclusion that today's law is not what the court of appeals said it was in 2008. More importantly, the law of the case doctrine prevents this court from re-evaluating what the court of appeals held in the direct appeal. Varela v. United States, 481 F.3d 932, 936 (7th Cir. 2007) ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed

circumstances."); Peoples v. United States, 403 F.3d 844, 847 (7th Cir. 2005) ("an initial federal determination controls in subsequent rounds of review if '(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.'" (quoting Sanders v. United States, 373 U.S. 1, 15 (1963)).

Mr. Jennings's strongest argument is that the sentencing court viewed the sentencing guidelines' recommendation as presumptively reasonable, which is something we now know a sentencing court can't do. Rita v. United States, 551 U.S. 338 (2007). Still, Mr. Jennings isn't entitled to relief on this ground.

As the government notes, Rita has never been held to be retroactive so as to apply in a collateral attack on a sentence. Rita was decided while Mr. Jennings's case was on direct appeal, and so would have applied in his direct appeal, *see, e.g.,* United States v. Schmitt, 495 F.3d 860, 864-865 (7th Cir. 2007), but Mr. Jennings doesn't seem to have raised the issue then.

But that isn't exactly what Mr. Jennings is trying to do. His argument is one of ineffective assistance of counsel: that his appellate counsel should have raised Rita on direct appeal. Failure to raise such an issue might amount to ineffective assistance of counsel. *See, e.g.*, Stallings v. United States, 536 F.3d 624 (7th Cir. 2008) (appellate counsel's performance deficient for failing to argue for limited remand after guidelines held to be discretionary).

3

"To prevail on an ineffective assistance of counsel claim, Lathrop must show that trial counsel's performance was deficient and that the deficient performance prejudiced his defense." United States v. Lathrop, 634 F.3d 931, 937 (7th Cir. 2011) (citing Strickland v. Washington, 466 U.S. 668, 689-692 (1984)).

> [W]e do not as a rule second-guess counsel's strategy. Instead, judicial scrutiny of a lawyer's performance must be highly deferential, and courts assessing counsel's performance generally presume that decisions at trial fall within the wide range of reasonable professional assistance. The law does not require counsel to raise every available nonfrivolous defense. Moreover, even if a lawyer's decision to omit a defense falls below this forgiving performance standard, *Strickland*'s requirement that prejudice be shown means that the defendant must make a case that there is a reasonable probability—one sufficient to undermine our confidence in the outcome—that the result of the proceeding would have been different if the defense had been presented.

Kerr v. Thurmer, __ F.3d __, 2011 WL 1105622, at *3 (7th Cir. Mar. 28, 2011) (quotations and citations omitted). A court's "review of the attorney's performance is 'highly deferential' and reflects 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Koons v. United States, __ F.3d __, 2011 WL 1584998, at 3 (7th Cir. Apr. 28, 2011) (quoting Davis v. Lambert, 388 F.3d 1052, 1059 (7th Cir. 2004)).

When, as in this case, a petitioner claims ineffective assistance for failing to raise a potential issue on appeal, the two prongs of the effectiveness of counsel test come together: if the petitioner wasn't harmed by the omission of the issue,

4

the failure to raise the issue can't be said to have been deficient performance. And the sentencing memorandum in Mr. Jennings's case makes clear that he wasn't harmed by his attorney's failure to argue Rita on appeal.

Had Mr. Jennings's counsel raised the issue on appeal, a statement in the sentencing memorandum ("the guidelines sentence is rebuttably presumed reasonable") might have persuaded the court of appeals that the sentencing court applied a forbidden presumption of reasonableness. Or he might not have persuaded the appellate court: the sentencing transcript contains no reference to such a presumption, and the remarks in that transcript show a search for a reasonable sentence, not placement of a burden on Mr. Jennings to justify a sentence outside the recommended range. The sentencing court said this:

> The Sentencing Guidelines are merely advisory. It is my task to select a reasonable sentence from between 10 years, which is the statutory minimum, and life. And a reasonable sentence is defined by the statute as one that is sufficient but not greater than necessary to satisfy the purposes of the sentencing statute. And frankly, as I look through the sentencing statute, I can't find anything terribly mitigating.

Transcript of February 27, 2007 sentencing hearing, at 17-18.

A review of the full sentencing transcript discloses no remark that wouldn't be at home in a sentencing hearing today, three and a half years after the Supreme Court decided Rita. The boilerplate reference in the sentencing memorandum is the only suggestion that the sentencing court treated the guidelines as presumptively reasonable.

5

On the other hand, a written sentencing memorandum trumps the sentencing judge's oral comments, United States v. Mendoza, 510 F.3d 749, 754-755 (7th Cir. 2007) (written statement trumped oral statement that guidelines are presumptively correct), and it might be difficult for an appellate court to identify the fine line between treating the guidelines as presumptively correct, which is prohibited, and giving "respectful consideration to the judgment embodied in the guideline range," which is required. United States v. Higdon, 531 F.3d 561, 562 (7th Cir. 2008).

But the sentencing transcript and the sentencing memorandum both make clear that the court's search for a reasonable sentence — and the court stated that it could impose any reasonable sentence from ten years to life, Sent. Tr. at 17, Sent Memo. at 7 [Doc. No. 61] — would have resulted in a sentence longer (not less) than 360 months had the government not recommended the low end of the guidelines. The guideline range didn't increase Mr. Jennings's sentence.

Further, the sentencing transcript and the sentencing memorandum make clear that, despite the memorandum's recital of a now-outdated principle, Mr. Jennings received the sentencing process contemplated by Rita:

> The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. 18 U.S.C. § 3552(a); Fed. Rule Crim. Proc. 32. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case

6

> warrants a different sentence regardless. See Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See Rules 32(f), (h), (i)(C) and (i)(D); see also Burns v. United States, 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.

Rita v. United States, 551 U.S. at 351. The Supreme Court further explained the proper, non-presumptive sentencing process in a companion decision:

> As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

Gall v. United States, 552 U.S. 38, 49-50 (2007) (citation omitted).

After calculating Mr. Jennings's guideline range as 360 months to life (as a career offender), the court noted that the calculation "is, of course, only the first step in determining a reasonable sentence," Sent. Tr. at 15, and invited the parties' arguments. The government asked for a 360-month sentence "given the amount of cocaine involved in this case and the record as a whole . . . ." Sent. Tr. at 15. Mr. Jennings's counsel argued for a sentence below that range in light of Mr. Jennings's age and the age of the conviction that launched him into career offender status. Sent. Tr. at 15-16. Mr. Jennings allocuted, denying his guilt and

7

concluding: "I know you ain't bound to the Guidelines, I just ask you do the best you can for me." Sent. Tr. at 16-17.

The court started by explaining that the guidelines are "merely advisory," and that the court's duty was "to select a reasonable sentence from between 10 years, which is the statutory minimum, and life. And a reasonable sentence is defined by the statute as one that is sufficient but not greater than necessary to satisfy the purposes of the sentencing statute. And, frankly, as I look through the sentencing statute, I can't find anything terribly mitigating." Sent. Tr. at 17-18. The court went on to discuss the nature and circumstances of the crime, *see* 18 U.S.C. § 3553(a)(1), including that the crack quantity was two and a half times what was necessary to trigger the ten-year statutory minimum and that it was more likely than not that Mr. Jennings was supplying a crack house. Sent. Tr. at 18; Sent. Memo. at 5. The court discussed Mr. Jennings's history and characteristics, *see* 18 U.S.C. § 3553(a)(1), including that at age 31, he had three prior felony convictions and six misdemeanor convictions, and that he had committed the crime of conviction about six weeks after being placed on supervised release for the same sort of crime. Sent. Tr. at 18-19; Sent. Memo. at 6.

The court discussed the need for the sentence to reflect the crime's seriousness and to promote respect for the law, *see* 18 U.S.C. § 3553(a)(2)(A), concluding that the guidelines provided the best measurement of those interests with respect to Mr. Jennings. Sent. Tr. at 19; Sent. Memo. at 6. The court noted

8

that the need to provide a just punishment, *see* 18 U.S.C. § 3553(a)(2)(A), was heightened by Congress's directive to the Sentencing Commission to see that career offenders are sentenced at or near the maximum term — life imprisonment, in Mr. Jennings's case. Sent. Tr. at 19; Sent. Memo. at 6-7. The court noted that a 30-year sentence ordinarily isn't needed to deter the average drug dealer. Sent. Tr. at 19-20; Sent. Memo. at 7; *see* 18 U.S.C. § 3553(a)(2)(B). The court found that the risk of future crimes by Mr. Jennings presented "an unusually great need [for the sentence] to protect the public." Sent. Tr. at 20; Sent. Memo. at 7; *see* 18 U.S.C. § 3553(a)(2)(C). The court noted that while Mr. Jennings might benefit from educational and vocational training, Sent. Memo. at 7; *see* 18 U.S.C. § 3553(a)(2)(D), that factor didn't help "decide between a 10-year sentence, a 30-year sentence, or life imprisonment." Sent. Tr. at 20. The court again noted the kinds of sentencing available (ten years to life), *see* 18 U.S.C. § 3553(a)(3), that "the Guidelines recommend a sentencing range of 30 years to life imprisonment," *see* 18 U.S.C. § 3553(a)(4)(A), that no policy statements from the Sentencing Commission applied, *see* 18 U.S.C. § 3553(a)(5), that the guidelines provided the best hope for national avoidance of sentencing disparities, *see* 18 U.S.C. § 3553(a)(6), and that restitution wasn't an issue, *see* 18 U.S.C. § 3553(a)(7). Sent. Tr. at 20-21; Sent. Memo. at 7-8.

After addressing each of the statutory sentencing factors in the context of Mr. Jennings's case, the court concluded that no sentence below the advisory range would be reasonable. Sent. Tr. at 21. The court went on: "I think there are

9

factors that would favor a sentence longer than 30 years, and I think it may be that Mr. Jennings is fortunate that the government does not seek a sentence in excess of that given the immediacy with which Mr. Jennings committed the crime again." Sent. Tr. at 21-22. In the sentencing memorandum, the court explained why a sentence of more than 360 months might be reasonable:

> When Mr. Jennings was sentenced to 84 months' imprisonment in 2001 for possession with intent to distribute crack cocaine, the government recommended that sentence — one at the low end of the guideline range — as part of the plea agreement. The court expressed concern about whether a low-end sentence was sufficient in light of Mr. Jennings' criminal history, but concluded that because an 84-months sentence was much longer than any prior sentence Mr. Jennings had received, it might be enough to get Mr. Jennings to change his ways. That conclusion was wrong. Barely six weeks after being released from that sentence for possession with intent to distribute crack, Mr. Jennings was trying again to distribute crack cocaine. And unlike most crack defendants that pass through this courtroom, Mr. Jennings was not trying to feed his own crack addiction.

Sent. Memo. at 8-9. Nonetheless, the court found the 360-month sentence sought by the government to be reasonable. Sent. Tr. at 22.

Given all this, it would be very difficult to conclude that Mr. Jennings's appellate counsel provided ineffective assistance by focusing on the substantial issue of whether Mr. Jennings's conviction for resisting law enforcement made him a career offender rather than on the stray boilerplate in the sentencing memorandum, given the deference owed to counsel's decisions and the general presumption that trial counsel's decisions fall within the wide range of professional competence," Kerr v. Thurmer, __ F.3d __, 2011 WL 1105622, at *3

(7th Cir. Mar. 28, 2011). More importantly, Mr. Jennings can't show any prejudice from that choice of issues to present on appeal. The court's explanation of its reasoning behind the sentence makes clear that Mr. Jennings got a 30-year sentence, not because of any presumption of reasonableness accorded to the sentencing guidelines, but rather because the government didn't ask for anything longer than 30 years.

For all of these reasons, the court DENIES the petition for relief under 28 U.S.C. § 2255 as amended [Doc. Nos. 82, 87].

ENTERED:  May 12, 2011

/s/ Robert L. Miller, Jr.
Judge
United States District Court

cc: K. Jennings
    W. Grimmer/J. Maciejczyk - AUSA